Madam Clerk, please call the case. Case 16-0499, Estate of Dorothy Breyer, LeRoy, deceased. Stephen LeRoy, breaking LeRoy at times, died early in youthful, versus Jeffrey LeRoy, at the late, at Jeffrey's off. Counsel, you're ready to proceed? We're ready. Please support, counsel. I'd like to take a minute here just to review a few of the facts, to refresh your recollection of why we're here. This is LeRoy died in the fall of 15, leaving a last will and testament. The last will and testament was dated August 18, 2015. That will was admitted to probate, and then subsequently one of the sons of Mrs. LeRoy filed a request for formal proof. And at the formal proof hearing before Judge Mack, the witnesses were produced that were witnesses to the will, and both testified in the transcripts here in the record that they had no conversation with the decedent, they were called from the cafeteria to come in and witness the will by the notary, that they had no reason to believe she was not of sound mind, that they saw nothing that would lead them to believe otherwise, but they had no opinion. They'd signed an attestation clause attached to the will, which is a separate page. They admitted they read it, they signed it. There were a couple of people that were just solicited to be witnesses to this will. When the will was admitted to probate, we proved due execution, everybody signed in the presence of everyone else. There's no question about that. Judge Mack ruled that he did not believe that that was sufficient under the formal proof 521 to sustain the will, and therefore vacated the earlier order admitting the will to probate. There's a couple of interesting things I wanted to call to your attention on that. Before Judge Mack held his final hearing, and he was discussing whether to set it for another hearing, I'm quoting from page 15 of the transcript, he said, so, there was no evidence that she wasn't of sound mind. That doesn't give one the belief that there are a lot of, that they are of sound mind is the concern I have. So, there was no evidence she wasn't of sound mind, and, of course, it's our position here that that was sufficient. But to follow along through what happened, there was another will that was earlier in time, so after this vacation order was entered, then Jeff Leroy, another son, came in and secured letters of office to a will dated 415 of 13. Then, just a few days later, a will dated later than that was admitted to probate, and that's the will that we're now operating under while this case is being resolved. So, there were three wills, none of which had a counsel do anything about, but the parties knew about, and so we're operating under the second will in time and awaiting the result in this particular case. Then the Judge Mack ruled that this will was not proven to his satisfaction in the formal proof hearing, and the other will was admitted after a few months went by. The parties filed a will contest under 8-2, and that matter was set for hearing under a different judge, Judge Gorman, and was sitting in probate court. On behalf of the proponents of that will, I filed a motion for partial summary judgment stating that, in my opinion, the will was sufficiently proven under existing Illinois law, particularly when you take into account the fact that there is a strong presumption that wills should be admitted except when fraud and so on is proven. Mr. Rock, on behalf of Jeffrey Leroy, filed a motion under 2619-1 to dismiss the will contest, which under the Civil Practice Act is equivalent to a motion for summary judgment. We argue that motion and the motion for partial summary judgment before Judge Gorman, and then she entered an order for which this appeal is taken, and denied the motion for partial summary judgment and granted the 2619 motion on the basis of estoppel. So we're here on two issues, plus I did want to mention you asked us to brief the issue of jurisdiction. I assume since we both conceded jurisdiction, we don't have any questions on that. So moving ahead then to the two issues before the court, which is the due execution of the will and estoppel. I'd like to comment on estoppel first. I think estoppel is a real simple matter that can be disposed of very simply. If you look at the case law, the Boyer case, the O-Y-E-R case that the other side is relying upon, just simply doesn't apply in this case. There's a case right here out of this district out there called the Johnson case on page 12 of my brief, which says it's a well-settled principle that unless you actually receive benefits, that you're not estopped from denying another will. And the benefits have to be by inheritance. So there's no facts here to show that the people who filed this will contest received any benefit whatsoever by the second prior will prior to the time that this third will was executed. In fact, if you look at the Appellee's brief, they cite a series of two or three cases, and they try to make you believe that actually because there are two wills, that somehow the benefits were received. But those cases involve people who more or less will shopped, and they had this will and that first will and the second will, and they liked the first will, and they introduced it to probate, took some benefits under it, then didn't like the result. Then they tried to admit the next will, and they said, no, no, you took benefits, you're estopped. That's not our situation at all. We have a situation where we only admitted an earlier will so the estate could move forward, and so we could move forward and collect the assets and administer the probate as per the Probate Act. So I think the estoppable argument should fail. I think Judge Gorman's decision on that should fail, which actually dismissed the case totally. In other words, said we don't even get a hearing in the will contest. So going then to the other issue, which is Judge Mack's decision, which she adopted saying that there was not sufficient proof to sustain this will and admit it to probate, we have to look at the case law. We have about 100 years of case law that I cited in my brief, and if you look at those cases, it's a well-established principle that there is a presumption in favor of admitting these wills to probate even if the testimony is weak. In other words, people die, people forget, and so on, or people just really don't know. In this case, we have a will not prepared or executed in a lawyer's office. Two people call from a cafeteria to come out and serve as witnesses. They probably don't know one way or the other, but they took a look. They saw what they saw, and they thought, well, that looks good enough to me. I'll sign the attestation clause. Then when pressed on cross-examination, they have to say they really don't know because they didn't talk with her. But wills can be admitted to probate and have been if you look back at the cases, particularly the seven cases I cited, most of which predate 1980. These wills should be admitted to probate because they can still be questioned. There's still a procedure whereby the persons who are unhappy about that will can file a will contest. On the other hand, if you don't admit this will to probate, you're foreclosing for everybody who is relying on that will. They have no further right to move forward except to appeal whatever decision that might be made here. So I think when you look at the law here as it has been evolved over the years, you find the courts giving a lot of, I guess they defer, I would say, to the fact that the people who testified usually have some opinion, but they don't have to know everything about the person. And if you look at the cases that have been cited here by the appellee, they rely on a case called Jacobson, which is a 5th District case decided in 1979, which three attesting witnesses to the will testified the decedent was not of sound mind. So it's not really too shocking that in Jacobson the will wasn't admitted to probate. Then Jacobson goes on to say that Section 3 of 6-4, which is the third thing you have to prove that the decedent was of sound mind, is there for a reason. But Jacobson then more or less defines that a little better when you get to the end of Jacobson because Jacobson says, we believe that where proof the testator's soundness of mind and memory at the time, at the time the will was executed is patently insufficient, then we must deny admission to probate patently. In other words, they're not saying you have to have everything right there every time you try to admit a will to probate, particularly the virtue of the fact that there is a presumption that these wills are duly executed presumption in favor of admitting it to probate. So this is pretty patent when you have the three witnesses. These witnesses in this case could not say that the person was of sound mind and memory at the time of the execution of the will. That's right. They could not. They had no way of knowing. What they saw, what they observed was good enough to sign the attestation clause. In other words, they had no reason to believe she wasn't, and they said that because that's the only question I could ask them. The argument of 6-4A is that the witnesses attest to the fact that the person's of sound mind and memory at the time of the execution. Yes. But if you look at the case law, and I cite it in my brief, there have been a lot of times that the court has had lawyers testify, changed their mind, and they signed the attestation clause and said, I'm going to change my mind. I don't think she was. And they said, ah, you signed the attestation clause, and therefore we're going to admit the will. The Illinois Supreme Court has done that. And if you look at the cases that I've cited that go back, I'd say, to 1907, they're pretty consistent on cutting some slack in these hearings like this where people change their mind or don't know or equivocate or only one out of two say this or that. They still admit these wills based on the fact that there is a strong presumption in favor of that. So I think we're in a position here where you're right. The very issue is what happens in a non-lawyer situation when you have two witnesses who don't know what they're doing who come in thinking they're witnessing a will as to the person signing it, and the person appears to be okay, and they say the person appears to be okay, but they didn't talk to the person. I don't think that throws the will out because anyone complaining still has a right to check on that by filing a will contest. They can go into mental capacity. They can go into underage wills, whatever they want. It's not over with. You admit the will, move ahead, and I think with that, that's what the court's intended for you to do. The fact that... Well, there's another section that allows you to test the admission of the will. I mean to say it should have been... Oh, yes. 8-4, 8-2 is a will contest, and you can... I'm talking about saying that the will should not have been admitted because you can't prove... 6-4 is the only section. 6-21, the formal proof, refers back to 6-4, and the formal proof statute came in in 1980 did not make a greater burden than there was before 1980. The only difference was that they allowed you to put the assustation clause in the will itself and add a notary and call that an affidavit, and so you could admit the will to probate without the necessity of calling witnesses. So that's the purpose of that, but the law didn't change from before that to after that. All these cases, and what the only Supreme Court has said about admitting wills to probate is still the same law that it was before. In fact, 6-21 is so restrictive that there's no one else I could call as a witness but those two witnesses. It says it right in the statute. She could have come from a mental exam and signed that will, but I couldn't have brought that person in to prove that. But because of the fact that I'm so restrictive in that hearing, it is what it is. I'm stuck with the two witnesses that testified and they did the best they could, but they did say she looked okay to me, I have no reason to believe that she was not of sound mind. So that's where we are. It becomes problematic when you have witnesses who are strangers. Yes. But it happens a lot in hospitals. It happens in situations like this, and those wills are still generally admitted to probate because they can be tested later. So that's our position. We believe that Judge Norman's orders should both be reversed, both on the issue of estoppel and on the issue of adopting Judge Mack's prior ruling that the admission to probate should be vacated. Thank you. Thank you, counsel. Counsel? Replace of court. Jeff Rock for Jeffrey Leroy. Dorothy Leroy had three sons and she had prepared two previous wills through her attorneys that left everything equally to those three sons. The will we're here about today was done 12 days before her death. If you look at it, it's some kind of form. It's got mistakes in it. It's got no evidence that it was prepared by an attorney. That will give all the property to the two sons who are appealing this judgment. Because of all of this mystery, Jeff Leroy requested that the witnesses come in and testify that the will was properly executed and that the testator was competent in their opinion. And I want to make something clear. There was a lot of reference to old cases. The court should note in 1980, and it's in our brief, the statute was actually changed. The Probate Act at that point in time said an attested witness must testify, and this is subsection 3, that he believed the testator to be of sound mind and memory at the time of signing. And I think that's the key. You have to believe. You can't be neutral. You can't be Switzerland on this. Well, she didn't look too bad. She wasn't, you know, sounding gibberish. She wasn't doing this. You have to believe that she was competent at the time that will was done. And I think that's the basis of these underlying decisions at the circuit court. When you walk in and you say, well, I've got two witnesses here who walk into a room. There's a guy sitting there. The guy never says a word. There's an elderly woman sitting there. She never says a word. Nobody says anything except the notary, when he hands the two kids the will and says, here's where you sign the attestation clause. And they walk out. So how can those witnesses even start to believe that the testator was of sound mind and memory when she sits there and says nothing? And from the record seems to react to nothing. She's just sitting there. And all that's said is the notary says, sign here, kids. That's the way to sign. Some of the older cases, the cases that are decided are pretty broad on that requirement. I think so, but I think the 1980 statute really, the change in the Probate Act in 1980 when you say you have to believe, I think that excuses those old cases from being real authority for this case. Because if it says now you have to believe, you just can't be neutral on this. You've got to believe that that standard was not met in this case. Because I don't know how you can understand, and there was no cross-examination of these witnesses, about how they could understand that she was competent or they had a belief that she was competent when she never said anything. The other guy in the room never said anything. They basically were shanghaied out of the dining room, brought into this room, signed the attestation clauses, and left. Roderman confirmed that Dorothy Leroy said nothing in her presence. And the same for Gerald Carroll. Nobody said anything. We just walked in and nobody gave it to us. Roderman was asked if she had any reason by appellate counsel to believe that Dorothy Leroy wasn't a sound mind and memory. And that's not the proper standard. The question is, was she? So we're really left with the questions that Mr. Neufel posed, where he's saying, to the witnesses, was there anything that led them to believe she was not sound of mind? That's not the question. The question was, do they have a good faith belief that she was? You know, Carroll admitted, I had no conversation with her, so there's no way for me to tell that she was a sound mind. The witnesses were observed by Judge Mack, and I think that's another important fact of this court. He listened to these two young people testify and decided that there was not evidence that she was competent to make that will. I want to just touch on the estoppel issue. After the will was turned away by Judge Mack and Judge Gorman, then there was a second will signed. And after that, the two appellants became the executors. They issued citations to my client, which they would not have been able to do had they not filed that will and relied on that prior will. So they took advantage of that will. And I think they are estopped at this point from saying, oh, well, if we're going to pursue Jeff Leroy through citations, if we're going to take other actions as executors of the prior will, they waive the right to come back and say, oh, forget all that. We'd like you now, after we've taken advantage of that second will, to be arguing whether or not the third will. They were performing duties as executors, weren't they? Yes. So is that the same as receiving a benefit? I mean, they're performing their duty, their obligation. And I guess there's no proof as to whether or not that was a good faith pursuit of my client. So I agree, Judge Carter. They were performing as executors, and there's no proof in the record that their performance was something other than on the up and up. What they did were things that happened with executors. That is true. Those types of things happened with executors, whether it was properness cases, a different issue that never got before the court. At any rate, the court should affirm that there was a failure to prove the validity of the will. There's just no good faith belief on anybody's part, and no effort on the part of the proponents of the will to make it something that people could believe in. The guy in the room could have said, well, let's ask her some questions. Let's have the notary ask some questions. Let's have somebody say something, rather than to bring two kids out of the dining room to sign a will where nobody says anything. Who's this guy in the room? I don't know. The kids didn't know. The two witnesses didn't know. He didn't say anything. He just sat in the corner, which makes you think about undue influence a little bit. But he was never identified to the two witnesses, who were the only people that I called in the formal proof of. So we don't know who he was. And the two witnesses were basically local stranger workers. Right, right. This was the Lutheran Hillside Village, which is a pretty large facility, and they were dining room associates, is what they characterized themselves as. The notary was from Lutheran Hillside also, so he corralled these two young people, brought them into the room with the other guy, and with an older woman, and told them to sign here. And that was the extent of it. We don't know if he was one of the children. I'm sorry, just... We don't know if he was one of the children. A guy. An unknown guy. We don't know. Because all we had at the trial level was the prove-up of the will, and the two witnesses didn't know who he was because he never said anything, and nobody identified him. And the testator didn't say anything, but I think she was... It's fair from the record that at least the notary identified her. But I think the testimony was clear. Only the notary spoke, and it was to the two kids to say, here's where you sign. And the notary was never called to identify who these people were? No. And what were the provisions in that will? Were they significantly different than the other wills? My client was disinherited. Remarkably. No, that's the main... He was disinherited with that will. Any other questions? Thank you. A couple of things. First of all, I don't think the provisions in the wills have anything to do with the validity of them. In other words, who gets what is something to complain about, but that really has nothing to do with whether the will was properly executed or whether the will should be admitted to probate. Secondly, this will was executed at a nursing home where the decedent went to visit her sister. She didn't live in the nursing home, so I don't get that impression. Also, there may be other issues here regarding the relationship between the decedent and her children that may very well justify what's happened here. And only with the will contest can that be dug into and determined. So, I don't know who the other gentleman was. Maybe that's important, maybe it isn't. But the bottom line here is, and I still say this is a controlling factor, in the Jacobson case, which is the case that the appellee cites for the proposition that this will should fail. It says, a properly executed attestation clause creates a presumption or prima facie case that a will has been duly executed and that presumption has been held to be sufficient to admit a will to probate in various circumstances. They signed the attestation clause and then they said, we saw nothing to make us believe that she wasn't of sound mind. She looked okay to us. That's the way it is. There's a difference between irrefutable presumption and irrefutable presumption. Yes, I agree with you. But then Judge Mack went on to say that there was no evidence to show that she wasn't of sound mind. So, this should be litigated in a will contest, not knocked out at this point. That's our position. Thank you. We'll take this matter under advisement and render a decision in the near future. In the meantime, we'll take a panel change for the next case. Thank you for your patience.